## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMANDA CERNY, JENNIFER
ZHARINOVA, TIFFANY TOTH GRAY,
PAOLA CANAS, KARA MONACO,
URSULA MAYES, DESSIE MITCHESON,
MONICA LEIGH BURKHARDT, MARIANA
DAVALOS, CLAUDIA SAMPEDRO,
JESSICA HINTON a/k/a JESSA HINTON,
SANDRA VALENCIA, KIMBERLY
COZZENS a/k/a KIM COZZENS,

Civil Action No.:

        *Plaintiffs*,

v.

COSTA VERDE CORP. and JORGE LY,

        *Defendant*.

Plaintiffs AMANDA CERNY, JENNIFER ZHARINOVA, TIFFANY TOTH GRAY,

PAOLA CANAS, KARA MONACO, URSULA MAYES, DESSIE MITCHESON, MONICA

LEIGH BURKHARDT, MARIANA DAVALOS, CLAUDIA SAMPEDRO, JESSICA HINTON

a/k/a JESSA HINTON, SANDRA VALENCIA, KIMBERLY COZZENS a/k/a KIM COZZENS,

(collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint

("Complaint") against defendant COSTA VERDE CORP. d/b/a LA PRADERA (collectively

"Defendant") and JORGE LY respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendant's

misappropriation, alteration, and unauthorized publication and use in advertising of images of

Plaintiffs, each of whom are well-known professional models, to promote their night club, LA

PRADERA located in Lowell, Massachusetts ("LA PRADERA" or the "Club").

2.      As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendant's appropriation of their likeness; c) violation of Massachusetts's Unfair Trade Practices Act (M.G.L.A. 93A § 11); d) violation of Massachusetts's right of publicity statute (M.G.L.A. 214 § 3A;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant COSTA VERDE CORP. is a corporation formed under the laws of the state of Massachusetts, with its principal place of business located at 1717 Middlesex Street, Lowell, Massachusetts 01851.   COSTA VERDE CORP. operates LA PRADERA, which is located at 1717 Middlesex Street, Lowell, Massachusetts 01851.

7.     Venue is proper in the United States District Court for the District of Massachusetts because Lowell, Massachusetts is Defendant's principal place of business.

8.     Primarily and substantially the alleged causes of action arose and accrued in Lowell, Massachusetts and the center of gravity for primarily and substantially all relevant events alleged in this complaint is predominately located in Lowell, Massachusetts.

## PARTIES

### *Plaintiffs*

9.     Plaintiff Amanda Cerny ("Cerny") is a well-known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff Jennifer Zharinova ("Zharinova") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Tiffany Toth Gray ("Toth") is a well-known professional model, and a resident of Orange County, California.

12.     Plaintiff Paola Canas ("Canas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13.     Plaintiff Kara Monaco ("Monaco") is a well-known professional model, and a resident of Orange County, California.

14.     Plaintiff Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

15.     Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Monica Leigh Burkhardt ("Leigh") is a well-known professional model, and a resident of Suffolk County, New York.

17.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Los Angeles County, California.

18.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

19.     Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Medellin, Colombia.

21.     Plaintiff Kimberly Cozzens a/k/a Kim Cozzens ("Cpzzems") is a well-known professional model, and a resident of Winchester, Hampshire, England.

### *Defendant*

22.     According to publicly available records, defendant COSTA VERDE CORP. is formed under the laws of the state of Massachusetts.  During times relevant to this action, COSTA VERDE CORP. operated LA PRADERA in Lowell, Massachusetts.

23.     According to publicly available records, and upon information and belief, JORGE LY, in his capacity as principal, owner and/or CEO of COSTA VERDE CORP. maintained operational control over LA PRADERA, including all advertising relating thereto.

### **FACTUAL ALLEGATIONS**

24.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

25.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book

modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

26.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendant in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with LA PRADERA.

27.     In the case of every Plaintiff, such appearance was false.

28.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

29.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

30.     Amanda Cerny is a fitness professional, television personality, blogger, and model. She was former Playboy Playmate of the Month (October 2011), as well as a cover model for *Health & Wellness Magazine*. She loves to blog about the importance of eating healthy and working out. She is also chairwoman and Founder of Play Foundation, which is a global foundation founded for the purpose of bringing the youth closer to their love of music. Ms. Cerny is very well known throughout the social media world with 4.1 million Vine followers, 2.8 million Instagram followers, 232 thousand YouTube subscribers, 2.3 million Facebook fans, over 360 thousand followers on Snapchat, and 341 thousand Twitter followers.

31.     That we know of, Cerny is depicted in the photo in Exhibit "A" to promote LA PRADERA on its Instagram on its page. Cerny appears in the Image wearing a Christmas themed outfit. This Image was intentionally altered to make it appear that Cerny was either an entertainer working at LA PRADERA, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

32.     Cerny has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Jennifer Zharinova is a highly successful model and actress. Zharinova has modeled for runway, print, commercial, and theatrical jobs for Great Clips, Chevrolet Malibu, 24 Hour Fitness, Caesar's Palace, Sprint, Levi's, Aveda, Target, and Guess among others.

34.     That we know of, Zharinova is depicted in the photo in Exhibit "B" to promote LA PRADERA on its Instagram page. Zharinova appears as the female model to the left of the advertisement. This Image was intentionally altered to make it appear that Zharinova was either an entertainer working at LA PRADERA that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

35.     Zharinova has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.     Tiffany Toth Gray is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Toth was the *Playboy* "Cyber Girl of the

Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner*, *Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Toth currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers

37.     That we know of, Toth is depicted in the photo in Exhibit "C" to promote LA PRADERA on its Instagram on its page. Toth appears at the top of the advertisement in a pink dress. This Image was intentionally altered to make it appear that Toth was either an entertainer working at LA PRADERA, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

38.     Toth has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Paola Canas is a Colombian born model now residing and working in the United States. Canas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Canas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Canas was chosen as the face of the Masters Golf Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV

networks such as Telemundo and TV Azteca. Canas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Canas has over 545 thousand Instagram followers, over 10.5 thousand followers on Twitter, and over nine thousand Facebook likes.

40.     That we know of, Canas is depicted in the photo in Exhibit "D" to promote LA PRADERA on its Instagram page. On the "Karaoke & Rumba" event advertisement, Canas appears as the model in the center of the advertisement.  In the advertisement promoting the "Primera Rumba 2019" event, Canas appears as the model to the right in the tank top and jeans. These Images were intentionally altered to make it appear that Canas was either an entertainer working at LA PRADERA that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

41.     Canas has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     Kara Monaco is an American model, actress, and reality TV star.  She has appeared in such publications as *FHM* and *Men's Fitness* magazine. Monaco has worked at Disney World, where as one of the performers portraying "Cinderella" and "Snow White" in the resort. Her connection with Playboy began when she was chosen as one of *Playboy's* "Sexiest Bartenders 2004." She then appeared on the cover of *Playboy* "Special Edition Girls of Summer" in August 2004. Monaco was Playmate of the Month in June 2005 and in June 2006, Playmate of the Year. She appeared in episodes *The Girls Next Door* and in the 2006 "Playmates at Play" swimsuit calendar, shot in Las Vegas. Monaco was a contestant on CBS's hit reality TV show,

BigBrother. She has over 32.4 thousand Instagram followers and 72.5 thousand Twitter followers

43.     That we know of, Monaco is depicted in the photo in Exhibit "E" to promote LA PRADERA on its Instagram on its page. In the advertisement, Monaco appears as the blonde model on the right wearing a black and white dress and fishnet tights. This Image was intentionally altered to make it appear that Monaco was either an entertainer working at LA PRADERA, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

44.     Monaco has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Ursula Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in *Maxim* magazine. She is well known as a "suitcase model #5" from the hit game show *Deal or No Deal*. Mayes has appeared on *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, *Vogue, Elle, In Style, Cosmopolitan*, and *Marie Claire*, to name a few. Mayes is currently a cover model and a star of the game *Juiced 2: Hot Import Nights*. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

46.     That we know of, Mayes is depicted in the photo in Exhibit "F" to promote LA PRADERA on its Instagram page. Mayes appears in the left image promoting the "Pre-Thanksgiving Glow Party" event. This Image was intentionally altered to make it appear that

Mayes was either an entertainer working at LA PRADERA that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

47.     Mayes has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.     Dessie Mitcheson competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Mitcheson entered *Maxim* magazine's annual "Hometown Hottie" contest along with thousands of models, she was crowned *Maxim* magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on *Maxim's* "Hot 100" list. She has graced the pages of multiple issues of *Maxim*, including a three-page spread, two centerfolds, and the cover for the May 2014 "Navy" issue. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has 406 thousand Instagram followers, over 22 thousand Facebook followers, and 13.9 thousand Twitter followers.

49.     That we know of, Mitcheson is depicted in the photo in Exhibit "G" to promote LA PRADERA on its Instagram on its page. Mitcheson appears as the center model in the advertisement promoting La Pradera's "Halloween Party" event. Mitcheson also appears as the only model in the advertisement for La Pradera's "Fiesta de Velitas y Chispitas" even.

Mitcheson also appears as the center model for La Pradera's "Traffic Light Party" event. These Images were intentionally altered to make it appear that Mitcheson was either an entertainer working at LA PRADERA, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

50.     Mitcheson has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Monica Leigh Burkhardt worked as a bartender and dental assistant prior to being encouraged by her childhood friend and fellow Playboy Playmate, Courtney Culkin, to try out. She has modeled for the famous men's magazine in various newsstand special editions (she was featured on the cover of "Playboy's College Girls" in September, 2005). She was the Playboy Cyber Girl of the Week for August 29, 2005 and the Cyber Girl of the Month for December, 2005. Leigh was subsequently named Cyber Girl of the Year for 2006. Moreover, she was the Playmate of the Month in the March, 2006 issue of Playboy and graced the cover of the August, 2006 issue. Leigh has appeared in several Playboy videos and on a handful of episodes of the reality TV series, The Girls Next Door (2005). She has acting roles in the movies, The Duel (2006), The Pool Boys (2009), The Gentleman (2007) and Road Raiders (2000). Monica has popped up as an extra not only in Spider-Man 3 (2007), but also on episodes of both Entourage (2004) and CSI: Miami (2002)

52.     That we know of, Leigh is depicted in the photo in Exhibit "H" to promote LA PRADERA on its Instagram page. Leigh appears as the blonde model on the right in the green outfit in the lower right image. This Image was intentionally altered to make it appear that Leigh

was either an entertainer working at LA PRADERA that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

53.     Leigh has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.     Mariana Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her 563,884 Instagram, Twitter, and Facebook followers.

55.     That we know of, Davalos is depicted in the photo in Exhibit "I" to promote LA PRADERA on its Instagram on its page. Davalos appears as the model to the right in the strappy top. This Image was intentionally altered to make it appear that Davalos was either an entertainer working at LA PRADERA, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

56.     Davalos has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered,

and will continue to suffer, damages as a result of same.

57.     Claudia Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Sampedro has three children, and is married to former Green Bay's star defensive end Julius Peppers.

58.     That we know of, Sampedro is depicted in the photo in Exhibit "J" to promote LA PRADERA on its Instagram page. Sampedro appears as the model on the left in the white dress. This Image was intentionally altered to make it appear that Sampedro was either an entertainer working at LA PRADERA that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

59.     Sampedro has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

60.     Jessica Hinton (aka Jessa Hinton) was discovered by a talent manager at a wedding at 14. By 16 she locked in three national TV commercials and made guest appearances on *Baywatch* and *7ᵗʰ Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the *Palms Hotel & Casino's* ad campaign. She then pursued TV personality roles hosting for *Victory Poker*, and *Top Rank Boxing* interviewing

the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Hinton also attained spokesmodel roles for *Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, and *Protein World*. She has ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue,* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was named Creative Director for *MAJR Media* and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 4.2 million followers on Facebook, Instagram and Twitter.

61.    That we know of, Hinton is depicted in the photo in Exhibit "K" to promote LA PRADERA on its Instagram page. In the advertisement for La Pradera's "Viernes de Salsenatos" event, Hinton appears as the model on the right in the red dress. In La Pradera's advertisement for the event "Rumba Karaoke," Hinton appears as the model on the right in the black dress. In the advertisement for La Pradera's event "Son Rumba," Hinton appears as the model on the left in the black dress.  These Images were intentionally altered to make it appear that Hinton was either an entertainer working at LA PRADERA that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

62.    Hinton has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized

63.     Sandra Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Besame Lingerie. She currently has over 141 thousand Instagram followers and over 77.6 thousand Twitter followers.

64.     That we know of, Valencia is depicted in the photo in Exhibit "L" to promote LA PRADERA on its Instagram page. Valencia appears as the blonde model on the right of the advertisement for La Pradera's "Siempre de Fiesta" event. In La Pradera's "Ladies Night" event, Valencia appears as the model to the left of the advertisement. In the advertisement for La Pradera's "De Película" event, Valencia appears as the model on the right side of the left image.  Finally, in the advertisement promoting La Pradera's "Viernes de Salsenato" event, Valencia appears as the blonde model in the black dress on the left. These Images were intentionally altered to make it appear that Valencia was either an entertainer working at LA PRADERA that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

65.     Valencia has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized

66.     Kimberly Cozzens a/k/a Kim Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies

internationally, two of them being LA Models and LATALENT

67.     That we know of, Cozzens is depicted in the photo in Exhibit "M" to promote LA PRADERA on its Instagram page. This Image was intentionally altered to make it appear that Cozzens was either an entertainer working at LA PRADERA that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

68.     Cozzens has never been employed at LA PRADERA, has never been hired to endorse LA PRADERA, has never been otherwise associated or affiliated with LA PRADERA, has received no remuneration for Defendant's unauthorized

***Defendant's Business***

69.     Upon information and belief, Defendant operated, during the relevant time period, LA PRADERA, where they engaged in the business of selling alcohol and food in a sexually-charged atmosphere.

70.     Upon information and belief, and in furtherance of its promotion their promotion of LA PRADERA, Defendant own, operate and control LA PRADERA's social media accounts, including its Facebook, Twitter, and Instagram accounts.

71.     Defendant used LA PRADERA's Facebook, Twitter, and Instagram accounts to promote LA PRADERA, and to attract patrons thereto.

72.     Defendant did this for their own commercial and financial benefit.

73.     Defendant has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as an entertainer working at LA PRADERA, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

74.     Defendant used Plaintiffs' Images and created the false impression that they

worked at or endorsed LA PRADERA to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

75.     As Defendant was at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by LA PRADERA and at no point have any of the Plaintiffs ever endorsed LA PRADERA, or otherwise been affiliated or associated with LA PRADERA.

76.     All of Defendant's activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendant did not compensate Plaintiffs for their use of their Images.

77.     As such, Plaintiffs have never received any benefit from Defendant's use of their Images.

***Standard Business Practices in the Modeling Industry***

78.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

79.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are

for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

80.     As detailed above, Defendant knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote LA PRADERA by and through various marketing and promotional mediums including, without limitation, LA PRADERA's website, Twitter, Facebook, and Instagram.

81.     Defendant showcased Plaintiffs' Images on LA PRADERA's social media pages to create the false impression that Plaintiffs worked at LA PRADERA, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

82.     Defendant did so to attract clientele to LA PRADERA, promote LA PRADERA, and thereby generate revenue for Defendant.

83.     Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed LA PRADERA.

84.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

85.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

86.     This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendant's use of Plaintiffs' Images is that they are entertainers, endorse a night club, or are otherwise associated or affiliated with a night club.

87.     At no point were any of the Plaintiffs ever affiliated with LA PRADERA, or Defendant.

88.     Each of Plaintiffs' Images was used without her consent.

89.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendant, to request the use of any of Plaintiffs' Images.

90.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

91.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including LA PRADERA website, Twitter, Facebook, or Instagram accounts.

92.     Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

93.     Upon information and belief, Defendant has taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

94.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

95.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendant, and protect Plaintiffs from the conduct described hereon.

96.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at LA PRADERA, or agreed to appear in LA PRADERA's advertisements.

97.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

98.     Upon information and belief, said deceptive advertisements had a material effect

on the purchasing decisions of consumers who attended LA PRADERA.

99.     Insofar as Defendant's published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

100.    Despite the fact that Defendant was at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendant nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

101.    Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

102.    Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

103.    Due to Defendant unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

104.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

105.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendant, and protect Plaintiffs from the conduct described hereon.

106.    Defendant used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with LA PRADERA, or worked at, sponsored, or approved of LA PRADERA's goods, services or

commercial activities.

107.    This was done to promote and attract clientele to LA PRADERA, and thereby generate revenue for the Defendant.

108.    Thus, this was done in furtherance of Defendant's commercial benefit.

109.    Despite the fact that Defendant was at all times aware that the Plaintiffs were neither affiliated, connected or associated with LA PRADERA, nor worked at, sponsored, or approved of LA PRADERA's goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with LA PRADERA.

110.    Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

111.    Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

112.    Due to Defendant unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
**(Common Law Right of Privacy)**

113.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

114.    As set forth hereon, Defendant has violated each Plaintiff's common law right to privacy under Massachusetts law.

115.    Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

116.    Defendant invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on LA PRADERA's website or related social media accounts as part of Defendant's advertising campaign.

117.    At all relevant times, LA PRADERA's website and social media accounts were used and operated by Defendant for advertising and trade purposes.

118.    LA PRADERA's website and social media accounts were designed to attract business to the Club and generate revenue for Defendant.

119.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

120.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

121.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

122.    Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for LA PRADERA.

123.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

124.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

125.    At no point did Defendant ever compensate Plaintiffs for its use of their Images.

126.    Defendant's actions are an unreasonable and/or serious interference with each Plaintiff's right of privacy.

127.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

<div align="center">

**FOURTH CAUSE OF ACTION**
**(Violation of *M.G.L. c. 214 § 1B*:  Right of Privacy)**

</div>

128.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

129.    Defendant has violated each Plaintiff's statutory right to privacy under *M.G.L. c. 214, § 1B*.

130.    Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

131.     Defendant invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on LA PRADERA's website or related social media accounts as part of Defendant's advertising campaign.

132.    At all relevant times, LA PRADERA's website and social media accounts were used and operated by Defendant for advertising and trade purposes.

133.    LA PRADERA's website and social media accounts were designed to attract

business to the Club and generate revenue for Defendant.

134.   Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

135.   Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

136.   Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

137.   Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for LA PRADERA.

138.   At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

139.   Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

140.   At no point did Defendant ever compensate Plaintiffs for its use of their Images.

141.   Defendant's actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

142.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

### FIFTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 3A*:  Unauthorized Use of Individual's Name, Portrait, or Picture)

143.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

144.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in her image, photo, persona and likeness.

145.    Within Massachusetts, Defendant's used each Plaintiff's image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their night club.

146.    No Plaintiff ever gave Defendant's written consent, authorization, or otherwise granted permission to Defendant's to use her image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

147.    Defendant was at all times aware that no Plaintiff ever authorized Defendant to use her image in advertising.

148.    As such, Defendant's misappropriation and publication of each Plaintiff's image in advertising was knowing and willful.

149.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

150.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or

promote a different product.

151.    Defendant was at all relevant times aware that they never received any Plaintiffs'

permission or consent to use their Images on any website or social media account, or on any

other medium, in order to promote the Club.

152.    At no point did Defendant ever compensate Plaintiffs for its use of their Images.

153.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs'

Images.

154.    In addition to the actual damages suffered by Plaintiffs based on Defendant's

violation of this statute and given Defendant's willful and knowing misappropriation and

publication of each Plaintiff's image, Plaintiffs are entitled to treble damages.

<div align="center">

### <u>SIXTH CAUSE OF ACTION</u>
**(Common Law Right of Publicity)**

</div>

155.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

156.    As set forth hereon, each Plaintiff has and had at the time of Defendant's

misappropriation a commercial interest in her image, photo, persona and likeness.

157.    Said commercial interest was developed by each Plaintiff through her investment

of time, effort and money in her career, image, persona and likeness.

158.    As set forth herein, Defendant used each Plaintiff's image and likeness for

commercial purposes by using same in Blush advertising.

159.    Defendant did so without any Plaintiff's consent, written or otherwise.

160.    Plaintiffs are further informed and believe and hereon allege that discovery will

prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via

different mediums, after the initial date of the posting of their image and likeness and through the

filing of this complaint.

161.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

162.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

163.    At no point did Defendant ever compensate Plaintiffs for its use of their Images.

164.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

165.    In addition, because Defendant's actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 93A § 11*: Unfair Trade Practices)

166.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

167.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under *M.G.L. c. 93A.*

168.     As set forth herein, Defendant embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs were either entertainers at the Club, endorsed the Club, or were otherwise associated or affiliated with the Club.

169.    Such methods of advertising were unfair and deceptive, and constituted deceptive

and unfair trade practices under Massachusetts law.

170.    Defendant's actions occurred primarily and substantially within Massachusetts.

171.    Defendant was at all times aware that no Plaintiff was an entertainer at, had contracted to endorse or promote, or was otherwise associated or affiliated with the Club, but nevertheless published each Plaintiff's image.

172.    This was done for Defendant's commercial benefit, and to the detriment of Plaintiffs.

173.    Plaintiffs suffered actual money damages by reason of Defendant's unfair and deceptive advertisements by, *inter alia*, being deprived those monies Defendant should have paid them for their appearance in Defendant's advertisements.

174.    In addition to actual damages, and in light of Defendant's knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, , as provided for under this statute.

175.     In addition to actual damages, to Defendant's unfair and deceptive acts may have the effect of causing such loss to each Plaintiff's business that Plaintiffs are entitled to injunctive relief.

**EIGHTH CAUSE OF ACTION**
**(Defamation)**

176.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

177.    As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

178.    Defendant's publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation

with the Club.

179.    None of these representations were true.

180.    In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were entertainers working at the Club or endorsed the Club.

181.    Defendant was at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

182.    In the alternative, Defendant published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

183.    Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

184.    Defendant's publication of Plaintiffs' Images constitutes defamation under Massachusetts law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as an entertainer and/or endorsing a night club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

185.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Massachusetts law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

186.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional entertainer and/or promoting a night club, an inference which Defendant's publication of the Images support.

187.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Massachusetts law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to her.

188.    Defendant's publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### NINTH CAUSE OF ACTION
#### (Negligence and *Respondeat Superior*)

189.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

190.    Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

191.    Further, Defendant should have maintained, or failed to maintain, policies and

procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

192.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

193.    Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

194.    Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

195.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.  Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

196.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

197.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

<div align="center">

**TENTH CAUSE OF ACTION**
**(Conversion)**

</div>

198.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

199.   Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

200.   By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

201.   As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>**ELEVENTH CAUSE OF ACTION**</u>
**(Unjust Enrichment)**

202.   Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

203.   As set forth in detail above, Defendant published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

204.   Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at the Clubs, or endorsed the Clubs.

205.   Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

206.   Upon information and belief, Defendant did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

207.   Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to their Clubs.

208.   Plaintiffs have not been compensated for Defendant's commercial exploitation of

their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

209.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
### (Quantum Meruit)

210.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

211.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

212.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

213.    Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendant has not compensated Plaintiffs.

214.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote the Club;

(c)  For punitive and/or treble damages, in an amount to be determined at trial, based on Defendant's knowing and willful misappropriation of Plaintiffs' publicity and property rights and deceptive trade practices;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Massachusetts law, including but not limited to the statutory right to privacy; statutory unauthorized use of name, portrait or picture; and the *M.G.L. c. 93 A* unfair and deceptive trade practices act; and,

(e)  For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

Dated:  June 3, 2021

<div style="margin-left:auto">

PLAINTIFFS,
By their Attorneys,

/s/Paul V. Sullivan
Paul V. Sullivan, BBO# 634466
Sullivan Law Offices, PC
33 Broad Street, Suite 302
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@psullivanlaw.com

and
John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel:  (646) 872-3178
Fax:: (855).220.9626
john@casaslawfirm.com
*Pro Hac Vice Application Forthcoming*

</div>